**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
Vernon Jones, *on behalf of himself and others similarly situated in the proposed FLSA Collective Action,*

                                       *Plaintiff,*

       *- against -*

Questfleet LLC, Mike "Doe", and Raymond "Doe",

                                      *Defendants.*
----------------------------------------------------------------X

Case No.: 1:21-cv-04042

Hon. District Judge
Carol Bagley Amon

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## A PRELIMINARY INJUNCTION AND
## <u>MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT</u>

**LEVIN-EPSTEIN & ASSOCIATES, P.C.**
Jason Mizrahi, Esq.
Joshua Levin-Epstein, Esq.
60 East 42nd Street, Suite 4700
New York, NY 10165
*Attorneys for Plaintiff*

Dated: New York, New York
       December 21, 2021

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ...................................................................................................... iii

**PRELIMINARY STATEMENT** ............................................................................................... 1

**RELEVANT PROCEDURAL HISTORY AND FACTUAL BACKGROUND** ..................... 4

A.
    The Filing of the Complaint.................................................................................... 4

        i.   Defendants' Couriers are Misclassified as Independent Contractors ..................... 4

        ii.  Defendants' Failure to Pay their Couriers Legally Required Wages...................... 5

    The Service of the Summons and Complaint .......................................................... 6

B.
    Defendants Retaliate Against Plaintiff.................................................................... 7

C.
    The Proposed First Amended Complaint................................................................ 11

D.
**LEGAL STANDARD** ............................................................................................................. 11

    I.   Legal Standard for a Preliminary Injunction ........................................................ 11

    II.  Legal Standard for Leave to Amend the Complaint ............................................. 12

**ARGUMENT**........................................................................................................................... 12

A.
    I.   Plaintiff is Entitled to a Preliminary Injunction.................................................... 12

    Likelihood of Success on the Merits....................................................................... 13

        i.   Defendants Have Taken Adverse Employment Actions Against Plaintiff in Retaliation for Filing the Complaint...................................................................... 14

        a.   Defendants Have Stopped Meaningfully Communicating with Plaintiff in Retaliation for Filing the Complaint...................................................................... 14

B.
        b.   Defendants are "Overloading" Plaintiff in Retaliation for Filing the Complaint . 15

C.
        c.   Plaintiff Has Suffered Material Adverse Changes to His Employment in Retaliation for Filing the Complaint........................................................................ 16

    Sufficiently Serious Questions and Balance of Hardships ..................................... 16

    Public Interest Supports Injunctive Relief ............................................................. 17

II.    Plaintiff Should be Granted Leave to Amend........................................................................ 17

**CONCLUSION** ............................................................................................................................ **18**

## TABLE OF AUTHORITIES

**Cases**

*Bank v. Spark Energy, LLC*,
    2020 WL 6873436 (E.D.N.Y. 2020)............................................................................. 12, 17

*Benzinger v. Lukoil Pan Americas, LLC*,
    447 F. Supp. 3d 99 (S.D.N.Y. 2020).................................................................................. 16

*Bertuzzi v. Copiague Union Free Sch. Dist.*,
    2020 WL 5899949 (E.D.N.Y. 2020)................................................................................. 15

*Cabrera v. CBC Corp.*,
    2018 WL 1225260 (S.D.N.Y. 2018).................................................................................. 16

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
    598 F.3d 30 (2d Cir. 2010)................................................................................................ 12

*Demirovic v. Ortega*,
    2017 WL 5196240 (E.D.N.Y. 2017)................................................................................. 13

*Flores v. Amigon,*
    233 F. Supp. 2d 462 (E.D.N.Y. 2002). .............................................................................. 17

*Jones v. Pawar Bros. Corp.*,
    434 F. Supp. 3d 14 (E.D.N.Y. 2020) ................................................................................ 14

*Kassner v. 2nd Ave. Delicatessen Inc.*,
    496 F.3d 229 (2d Cir. 2007).............................................................................................. 16

*Marcotte v. City of Rochester*,
    677 F. App'x 723 (2d Cir. 2017)........................................................................................ 15

*Neita v. Precision Pipeline Sols.*,
    2018 WL 3151699 (E.D.N.Y. 2018)................................................................................. 15

*Rodriguez v. Nat'l Golf Links of Am.*,
    2020 WL 3051559 (E.D.N.Y. 2020)................................................................................. 17

*Salazar v. Bowne Realty Assocs., L.L.C.*,
    796 F. Supp. 2d 378 (E.D.N.Y. 2011) .............................................................................. 14

*Salinger v. Colting,*
    607 F.3d 68 (2d Cir. 2010)................................................................................................ 11

*Santana v. Rent A Throne, Inc.*,
        2018 WL 1027667 (E.D.N.Y. 2018)...................................................................................... 13

*Sapia v. Home Box Off., Inc.*,
        2019 WL 4867539 (S.D.N.Y. 2019)..................................................................................... 16

*Ulbricht v. Ternium S.A.*,
        2020 WL 5517313 (E.D.N.Y. 2020)..................................................................................... 12

*SEC v. Citigroup Global Mkts. Inc.*,
        673 F.3d 158 (2d Cir. 2012)................................................................................................. 17

*Virgin Enters. Ltd. v. Nawab*,
        335 F.3d 141 (2d Cir. 2003)................................................................................................. 11

## **<u>Statutes</u>**

29 U.S.C. § 203(a) ........................................................................................................................ 13

29 U.S.C. § 215(a)(3)..................................................................................................................... 13

Fed.R.Civ.P. 15(a)(2)..................................................................................................................... 12

Fed.R.Civ.P. 65 .............................................................................................................................. 11

NYLL § 215(1)(a)........................................................................................................................... 13

iv

Plaintiff Vernon Jones (the "Plaintiff", or "Jones"), by and through the undersigned counsel, respectfully submit this Memorandum of Law, together with the affidavit of Vernon Jones (the "Jones Aff."), and the exhibits annexed thereto, and the declaration of Jason Mizrahi (the "Mizrahi Decl."), and the exhibits annexed thereto, in support of Plaintiff's emergency motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 65, enjoining and restraining Defendants Questfleet LLC, Mike "Doe", and Raymond Picardo[1] (collectively, the "Defendants") from, *inter alia*, harassing, intimidating, and/or retaliating against Plaintiff, in any form, and in support of Plaintiff's motion for leave to file a first amended complaint, pursuant to Fed.R.Civ.P. 15(a)(2), and as grounds thereto respectfully state as follows:

## PRELIMINARY STATEMENT

This is an action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and Articles 6 and 19 of the New York State Labor Law ("NYLL"), brought by an individual against his former employers for violations of federal and state wage-and-hour laws.

Defendants own, operate and/or control a "year-round" courier delivery service known as "Quest Fleet". Defendants continuously employed Jones as a delivery courier from August 2020, through and including the present date. Defendants "are known for reducing transportation expenses without lowering the quality of service."[2] To accomplish their business goals, Defendants misclassify their couriers, including Jones, as independent contractors, and fail to pay their couriers, including Jones, legally required wages under the FLSA and NYLL.

---

[1] As set forth more fully in Plaintiff's motion, and in Plaintiff's proposed First Amended Complaint, Raymond Picardo was previously sued herein as Raymond "Doe", and will be added as a Defendant as part of the claims supporting Plaintiff's preliminary injunction.

[2] *See* http://questfleet.com/about-us/.

1

Defendants' abusive tactics have continued and surfaced in this case which necessitates the instant emergency relief. Since the commencement of the action, Defendants initiated a campaign of harassment and retaliation against Plaintiff. At the center of this campaign is Defendant Mike "Doe"[3], who has been literally and figurately overloading Plaintiff in a concentrated effort to pressure Plaintiff to resign or quit his position at Quest Fleet, in retaliation for having filed this lawsuit. Far more concerning, Defendants' campaign has turned recklessly dangerous.

On December 11, 2021, Jones was forced to deliver a large payload of goods that exceed his car's normal storage capacity. Large payloads, such as the one Jones was forced to deliver, are colloquially known in the transportation industry as a "Sprinter Load". Sprinter Loads require the use of a "Sprinter Van", or other specialized truck for safe transport.[4] Rather than providing Jones with a Sprinter Van, or any one of the many other specialized trucks in Quest Fleet's "Fleet"[5], Jones was forced to use his sedan. Within minutes of transporting the Sprinter Load back to Quest Fleet's pre-assigned dispatch location, the undercarriage of Jones's vehicle collided with a speedbump.

The very next day, on December 12, 2021, Jones was forced to deliver *another Sprinter Load*. When Jones requested the use of a Sprinter Van, or suggested that he be permitted two make

---

[3] Defendants have gone to great lengths to keep the identities of Quest Fleet's managers a mystery. [*See* Jones Aff. at ¶ 2 n.1]. Plaintiff respectfully reserves the right to move for leave to file a motion to amend the case caption, after the appropriate stage of discovery.

[4] Defendant's' website http://questfleet.com/ ("Defendant's Website") contains a list of "Frequently Asked Questions". In response to the prompt: "What Type of Vehicle Will I Use", Defendants represent as follows:

> "Each driver must have a vehicle suitable for delivering small to medium size packages, usually just a few bags but sometimes several cases. It is recommended that you use a fuel-efficient vehicle in good condition for deliveries. Other Vehicles like Sprinters or Trucks are for special deliveries."

*See* http://questfleet.com/career/.

[5] Defendant's Website lists their "Fleet" of vehicles, which includes four (4) specialized trucks designed to transport Sprinter Loads, *to wit*: (i) Sprinter Vans; (ii) cargo vans; (iii) minivans; and (iv) 24ft box trucks. *See* http://questfleet.com/our-fleet/

multiple trips to deliver the Sprinter Load, he was inexplicably terminated for the day – without pay.

Two days later, on December 14, 2021, after Jones informed Quest Fleet's managers of this issue, he was inexplicably reassigned from his usual pre-assigned dispatch location to a dispatch location in Coney Island, New York – one (1) to two (2) hours away from his usual delivery points. Jones is not compensated for this additional delivery time. The following morning, when he arrived at Coney Island, Jones was inexplicably told that he was not needed. He was, once again, terminated for the day – without pay.

Defendants are ruthlessly targeting Plaintiff in retaliation for complaining about Defendants' wage-theft policies. The circumstances here are dire – and necessitate immediate Court intervention to prevent further escalation.

As demonstrated in Section I, *infra*, Plaintiff is entitled to a preliminary injunction. The anti-retaliation provisions of the FLSA and NYLL extend to adverse employment actions.[6] Irreparable harm is also present. Left unchecked, Defendants' unreasonable policies pose a threat of physical harm to Plaintiff, and potentially to other members of the public who share the road with Defendants' "Fleet". Accordingly, the Court should enter an order temporarily enjoining and restraining Defendants from, *inter alia*, harassing, intimidating, and/or retaliating against Plaintiff, in any form.

The instant motion also respectfully requests leave to file the proposed first amended complaint (the "First Amended Complaint", or "FAC"), adding Raymond Picardo[7] as an individual

---

[6] *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 240 (2d Cir. 2007) (employee moved to a less desirable work station and shift assignments was a victim of an adverse employment action.)

[7] As set forth more fully in Plaintiff's motion, and in Plaintiff's proposed First Amended Complaint, Raymond Picardo was previously sued herein as Raymond "Doe", and will be added as a Defendant as part of the claims supporting Plaintiff's preliminary injunction.

Defendant, and two (2) additional causes of action for: (i) retaliation under the FLSA; and (ii) retaliation under the NYLL.[8] Leave to amend should be given here under Fed.R.Civ.P. 15(a)(2).

## **RELEVANT PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

For the sake of brevity, the relevant factual background is set forth in the Jones Aff., sworn to on December 21, 2021, and the exhibits annexed thereto. Additional information is provided in the accompanying Mizrahi Decl., dated December 21, 2021, and the exhibits annexed thereto.

### **The Filing of the Complaint**

**A.** The instant action was filed on July 19, 2021. [Dckt. No. 1] (the "Complaint", or the "*Compl*."). Defendants are the owners and operators of "Quest Fleet", a "year-round" courier delivery service that has been in business for over seven (7) years. [*Id*. at ¶ 28]. Plaintiff has worked at Quest Fleet as a delivery courier since August 2020. [*Id*. at ¶ 7]. Defendants pride themselves on "reducing transportation expenses without lowering the quality of service." [*Id*. at ¶ 43]. To accomplish their business goals, Defendants misclassify their couriers, including Jones, as independent contractors, and fail to pay their couriers, including Jones, legally required wages under the FLSA and NYLL. [*Id*. at ¶ 44].

### **i.    Defendants' Couriers are Misclassified as Independent Contractors**

Defendants' drivers, including Jones, were required to wear t-shirts while working for Defendants' dispatchers. [*Id. at* ¶ 45]. Throughout his employment, Defendants set Jones' delivery routes. [*Id. at* ¶ 46]. Jones did not, and could not, negotiate his delivery routes with Defendants. Throughout his employment, Defendants could change Jones' delivery routes at will, without Jones' input. [*Id. at* ¶ 47]. Throughout his employment, Defendants determined the amounts that Jones would be paid. Jones did not negotiate his pay. [*Id. at* ¶ 48]. Throughout his employment,

---

[8] Plaintiff respectfully reserves the right to move for leave to file an additional cause of action for filing fraudulent information returns with the IRS in violation of 26 U.S.C. § 7434, after the appropriate stage of discovery.

Defendants required Jones to report to Mike "Doe" or Raymond Picardo throughout the course of his performance of work duties each workweek. [*Id. at* ¶ 49]. Throughout his employment, Defendants supervised and directed Jones' performance of his work duties. [*Id. at* ¶ 50]. For example, Defendants required Jones to start and end his workday at a pre-assigned dispatch location. [*Id. at* ¶ 51]. Jones was also required to return to the pre-assigned dispatch location in between every delivery, to be assigned routes. [*Id. at* ¶ 52]. Throughout his employment, Defendants required Jones to contact them if he had to change his schedule. [*Id. at* ¶ 53]. Throughout his employment, if Jones did not perform his duties as Defendants ordered him to do so, Defendants would threaten to take away Jones' dispatch locations, or change Jones' routes, effectively taking away his weekly compensation. [*Id. at* ¶ 54].

Despite labeling their couriers, including Jones, as independent contractors, Defendants have preserved down to the minute time records of their couriers since September 2021. [Jones Aff. at ¶ 5 n.3].

### ii.    Defendants' Failure to Pay their Couriers Legally Required Wages

From at least August 2020, Jones regularly worked approximately 7:00 a.m. to 6:00 p.m. per workweek, five (5) to six (6) days per week, for approximately 55 to 66 hours during each of the weeks, respectively. [*Compl.* at ¶ 55]. Throughout his employment for Defendants, Jones was paid as an independent contractor on a flat salary basis, at a rate of $120 per day. [*Id.* at ¶ 56]. On average, Defendants regularly paid Jones approximately $600 to $720 per workweek throughout his employment. [*Id.* at ¶ 57]. Plaintiff's wages did not vary regardless of how many additional hours he worked in a week. [*Id.* at ¶ 58]. If Jones ever worked a part day, or a half-day, Defendants would not pay Jones his $120 day rate, and would deduct Jones' pay. [*Id.* at ¶ 61]. Defendants also failed to provide Plaintiff with accurate written wage notices and wage statements of, *inter alia*, their hours worked, hourly rate of pay, overtime rate of pay, and regular payday, in violation of

NYLL § 195(3). [*Id*. at ¶¶ 69-70].As a result, Defendants operated their business with a policy of not timely paying Plaintiff for all regular or overtime hours worked, in violation of the FLSA and NYLL. [*Id*. at ¶¶ 76-106].

The Complaint asserts seven (7) Causes of Action against Defendants.

| | |
|---|---|
| FIRST: | Unpaid minimum wages under the FLSA; |
| SECOND: | Unpaid overtime wages under the FLSA; |
| THIRD: | Unpaid minimum wages under the NYLL; |
| FOURTH: | Unpaid overtime wages under the NYLL; |
| FIFTH: | Unpaid spread-of-hours premiums under the NYLL; |
| SIXTH: | Failure to provide wage notices under the NYLL and Wage Theft Prevention Act; and |
| SEVENTH: | Failure to provide wage statements under the NYLL and Wage Theft Prevention Act. |

[*Id*.].

**B.**

### The Service of the Summons and Complaint

On July 19, 2021, Plaintiff filed a Proposed Summons as to each Defendant. [Dckt. Nos. 5-7]. An electronic summons was subsequently issued later that day. [Dckt. No. 8]. On July 22, 2021, Defendants Raymond Picardo and Mike "Doe" were served a Summons and Complaint, with a Civil Cover Sheet. [*See* Dckt. Nos. 11-12]. Pursuant to Fed.R.Civ.P. 12, an answer or other response to the Complaint was due on or before August 12, 2021. [*Id*.]. On August 2, 2021, proof of service was filed with the Court. [*Id*.]. On July 28, 2021, Defendant Questfleet LLC was served a Summons and Complaint, with a Civil Cover Sheet. [*See* Dckt. No. 10]. Pursuant to Fed.R.Civ.P. 12, an answer or other response to the Complaint was due on or before August 18, 2021. [*Id*.]. On August 2, 2021, proof of service was filed with the Court. [*Id*.].

On August 12, 2021, Defendants appeared in the action through counsel, Jasinski, P.C. [Dckt. No. 14, 16]. Defendants filed an answer with affirmative defenses in response to the Complaint on September 10, 2021. [*See* Dckt. No. 17]. Thus, Defendants had both actual and constructive knowledge of the instant action.

**Defendants Retaliate Against Plaintiff**

Shortly after Defendants became aware of Plaintiff's lawsuit they initiated a campaign of threatening, harassing, intimidating and retaliating against Plaintiff. [Jones Aff. at ¶ 7]. At the center of this campaign is Defendant Mike "Doe"[9], who has been literally and figurately overloading Plaintiff in a concentrated effort to pressure Plaintiff to resign or quit his position at Quest Fleet. [*Id.* at ¶ 8]. Far more concerning, Defendants' campaign has turned recklessly dangerous. [*Id.* at ¶ 9].

On or around October 18, 2021, Defendants withheld Plaintiff's wages for the week of September 20, 2021. [*Id.* at ¶ 10].Specifically, Defendants had failed to pay Plaintiff one (1) day of wages for that workweek. [*Id.* at ¶ 11]. Plaintiff contacted Defendants' office manager – Mable Iro – to explain the issue. [*Id.*]. When Plaintiff contacted Miss. Iro – she refused to answer his inquiry, and verbally berated Plaintiff for filing the Complaint, exclaiming something to the effect of: "[Jones is] wrong for filing this lawsuit! [Jones is] an independent contractor!". [*Id.*]. Since then, all of Plaintiff's phone calls to Defendants' administrative offices have gone straight to voicemail. [*Id.* at ¶ 12]. Plaintiff subsequently approached his direct supervisor – Mike "Doe" – who confirmed that the payment was inexplicably issued to another employee, and that Plaintiff would have to "take it up with him" to recover his pay. [*Id.* at ¶ 13].

---

[9] As explained in more detail below, and in the Jones Aff., Defendants have gone to great lengths to keep the identities of Quest Fleet's managers a mystery. [*See* Jones Aff. at ¶ 2 n.1]. Plaintiff respectfully reserves the right to move for leave to file a motion to amend the case caption, after the appropriate stage of discovery.

At the time, Plaintiff gave Defendants the benefit of the doubt, and decided to have the undersigned counsel contact Defendants' counsel in lieu of filing an amended complaint for retaliation under the FLSA and NYLL. [*Id.* at ¶ 14]. It is disconcerting that Defendants' retaliatory conduct has recently escalated, as explained in detail below. [*Id.* at ¶ 15].

On December 11, 2021 Jones arrived at his pre-assigned dispatch location at 21-30 Bergen St., Brooklyn, NY 11233 ("Part's Authority") to receive a delivery route. [*Id.* at ¶ 16]. At Part's Authority, the dispatcher – "Dio" – told Jones that he was to go to "F&S Service Station" located at 2557 Linden Blvd, Brooklyn, NY 11208 to pick up a payload of returns. [*Id.* at ¶ 17]. Of critical importance, "Dio" did not specify the size of the payload Jones was required to deliver. [*Id.* at ¶ 18]. When Jones arrived at "F&S Service Station", he was informed that he was required to deliver a "Sprinter Load." [*Id.* at ¶ 19]. A "Sprinter Load" is a colloquial term in the transportation industry for a large payload, that requires the use of a "Sprinter Van" or other large truck. [*Id.* at ¶ 20].

At "F&S Service Station" Jones was presented with four (4) itemized invoices, made out to Part's Authority, specifying the exact size of the payload. [*Id.* at ¶ 21]. Thus, it is beyond doubt that Questfleet was aware that the size of the payload required a Sprinter Van, or other specialized truck for safe transport.[10] [*Id.* at ¶ 22]. Rather than providing Jones with a Sprinter Van, or any one of the many other specialized trucks in Quest Fleet's "Fleet"[11], Jones was forced to use his sedan. [*Id.* at ¶ 23].

---

[10] Defendant's' Website http://questfleet.com/ contains a list of "Frequently Asked Questions". In response to the prompt: "What Type of Vehicle Will I Use", Defendants represent as follows:

> "Each driver must have a vehicle suitable for delivering small to medium size packages, usually just a few bags but sometimes several cases. It is recommended that you use a fuel-efficient vehicle in good condition for deliveries. Other Vehicles like Sprinters or Trucks are for special deliveries."

*See* http://questfleet.com/career/.

[11] Defendant's Website lists their "Fleet" of vehicles, which includes four (4) specialized trucks designed to transport Sprinter Loads, *to wit*: (i) Sprinter Vans; (ii) cargo vans; (iii) minivans; and (iv) 24ft box trucks. *See* http://questfleet.com/our-fleet/

8

After nearly two (2) years of working with Defendants as a transport route driver, Jones knew that: (i) he could not negotiate his delivery routes; (ii) Defendants would "randomly" reassign his delivery routes whenever he would complain; and (iii) Defendants would refuse to assign him routes if he complained or rejected a route. [*Id.* at ¶ 24].

Reluctantly, Jones packed his car, and began driving back to Part's Authority to return the payload. [*Id.* at ¶ 25]. *En route* to Part's Authority, Jones hit a speedbump. [*Id.*]. Because of the size of the payload, his vehicle was too low to the ground. [*Id.*]. As soon as he hit the speedbump, Jones realized that his vehicle was damaged. [*Id.*].

After the accident, Jones contacted his direct supervisor – Defendant Mike "Doe". [*Id.* at ¶ 26]. Jones informed Mike that he was forced to deliver a Sprinter Load, without being provided a Sprinter Van, and that his personal vehicle was damaged as a result. [*Id.*]. Mike ignored Jones' texts. [*Id.*]. This is unusual, considering the fact that Mike would not ignore Jones' texts before the filing of the instant lawsuit. [*Id.*].

On December 12, 2021, Jones returned to his pre-assigned dispatch location at "Part's Authority". [*Id.* at ¶ 27]. At Part's Authority, the dispatcher – "Dio" – told Jones that he was to deliver another Sprinter Load consisting of bus calipers. [*Id.*]. Jones replied that his personal vehicle was damaged because of Questfleet's failure to provide him with a Sprinter Van the day prior, and that he needed a Sprinter Van to deliver the Sprinter Load. [*Id.* at ¶ 28]. Alternatively, Jones suggested that he be permitted to make two (2) trips to deliver the Sprinter Load. [*Id.*].

In response to Jones' requests, the dispatcher – "Dio" – replied something to the effect of "what's your problem?" [*Id.* at ¶ 29]. To which Jones simply replied, "that's too much weight." [*Id.*]. As a result, Jones was not assigned any other delivery routes, and inexplicably terminated for the day – without pay. [*Id.* at ¶ 30]. After Jones went home, he contacted my direct supervisor

– Defendant Mike "Doe" – to inform him of the incident. Mike, once again, ignored Jones' texts. [*Id.* at ¶ 31].

On December 13, 2021, Jones took his vehicle to an autobody shop to assess the damage. [*Id.* at ¶ 32]. Jones was informed that the undercarriage of his car was damaged because of the "Sprinter Load" he was forced to deliver on December 11, 2021. [*Id.*]. Jones was also told that his car had transmission issues as a result of the damage to the undercarriage. [*Id.* at ¶ 33]. Jones expects his out-of-pocket costs to repair my vehicle to be approximately $5,000. [*Id.* at ¶ 34]. As a result of the damage to his vehicle, Jones will also likely be out of work for the foreseeable future. [*Id.* at ¶ 35].

On December 13, 2021 Jones, once again, contacted his direct supervisor – Defendant Mike "Doe" – to inform him of the incident. [*Id.* at ¶ 37]. Jones sent Mike photos of the payload he was forced to deliver, and told Mike that Questfleet should not be forcing their drivers to deliver Sprinter Loads with their personal vehicles. [*Id.* at ¶ 38]. Mike simply replied: "Damn that's a lot bro," and "That's fucked up." [*Id.* at ¶ 39].

On December 13, 2021 at 11:37 p.m. Jones asked Mike what my next assigned delivery route would be, as he is typically required to do. [*Id.* at ¶ 41]. The following morning, on December 14, 2021, without explanation – Mike reassigned Jones from his pre-assigned dispatch location at Part's Authority to 2508 Coney Island Ave., Brooklyn, NY 11223 ("Coney Island"). [*Id.* at ¶ 42]. Depending on traffic, Coney Island is one (1) to two (2) hours away from Jones' typical delivery points. Jones is not compensated for this additional delivery time. [*Id.* at ¶ 43].

On December 16, 2021 Jones arrived at his newly pre-assigned dispatch location at Coney Island, based on instructions provided to him by Defendant Mike "Doe". [*Id.* at ¶ 44]. When Jones arrived at Coney Island, he was inexplicably told that he was not needed. Jones was, once again, terminated for the day – without pay. [*Id.* at ¶ 45].

10

Defendants are ruthlessly targeting Jones in retaliation for complaining about Defendants' wage-theft policies. [*Id.* at ¶ 46]. The circumstances here are dire – and necessitate immediate Court intervention to prevent further escalation. [*Id.*].

**The Proposed First Amended Complaint**

Plaintiff's proposed First Amended Complaint seeks to add Raymond Picardo[12] as an individual Defendant, and two (2) additional causes of action for: (i) retaliation under the FLSA; and (ii) retaliation under the NYLL.[13] [*See, generally,* FAC]. For the Court's convenience, a copy of the proposed First Amended Complaint is attached to the Mizrahi Decl. as **Exhibit** "**A**", and a redlined version of the First Amended Complaint is attached to the Mizrahi Decl. as **Exhibit** "**B**".

## <u>LEGAL STANDARD</u>

### I.    Legal Standard for a Preliminary Injunction

Preliminary injunctions and temporary restraining orders may be granted under Fed.R.Civ.P. 65[14] when the plaintiff establishes: (1) "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation"; (2) that they are "likely to suffer irreparable injury in the absence of an injunction"; (3) "the balance of hardships tips in [their] favor" ("decidedly" so where there are "serious questions going to the merits"); and (4) the "'public interest would not be disserved' by the issuance of a preliminary

---

[12] As set forth more fully in Plaintiff's motion, and in Plaintiff's proposed First Amended Complaint, Raymond Picardo was previously sued herein as Raymond "Doe", and will be added as a Defendant as part of the claims supporting Plaintiff's preliminary injunction.

[13] Plaintiff respectfully reserves the right to move for leave to file an additional cause of action for filing fraudulent information returns with the IRS in violation of 26 U.S.C. § 7434, after the appropriate stage of discovery.

[14] Fed.R.Civ.P. 65 provides in relevant part as follows:

> (a)   Preliminary Injunction. (1) Notice. The court may issue a preliminary injunction only on notice to the adverse party.

> (b)   Temporary Restraining Order. (1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney…

*See* Fed.R.Civ.P. 65.

11

injunction." *Salinger v. Colting,* 607 F.3d 68, 74, 79-80 (2d Cir. 2010) (citations omitted); *see also Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 145 (2d Cir. 2003). The "'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,* 598 F.3d 30, 35 (2d Cir. 2010).

## II.     Legal Standard for Leave to Amend the Complaint

Under Fed.R.Civ.P. 15(a), a court "should freely give leave" to a party to amend its pleading "when justice so requires." Fed.R.Civ.P. 15(a)(2). "This rule is a 'permissive standard,' although leave to amend may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Ulbricht v. Ternium S.A.*, 2020 WL 5517313, at *12 (E.D.N.Y. 2020) (citing *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015), and *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).

In exercising its discretion, a district court must bear in mind that the overall goal is "to secure the just, speedy, and inexpensive determination of every action." *Bank v. Spark Energy, LLC*, 2020 WL 6873436, at *2 (E.D.N.Y. 2020), *aff'd*, 860 F. App'x 205 (2d Cir. 2021) "The Rules themselves provide that they are to be construed 'to secure the just, speedy, and inexpensive determination of every action.'" *Id.* (quoting Fed.R.Civ.P. 1) (internal citation omitted). Indeed, this is the "paramount command" of the Federal Rules of Civil Procedure. *Id.* (citing *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016)).

## ARGUMENT

## I.     Plaintiff is Entitled to a Preliminary Injunction

In this case, the Court should respectfully grant the requested relief because Plaintiff can demonstrate each of the elements for a preliminary injunction.

**A.**     **Likelihood of Success on the Merits**

Plaintiff has demonstrated a likelihood of success on the merits of their FLSA and NYLL retaliation claims. The FLSA provides that it is "unlawful for any person…to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]…" 29 U.S.C. § 215(a)(3). Under the FLSA, a person is defined as any "individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a). Thus, the anti-retaliation provision of the FLSA does not apply only to employers; it applies to "any person." *Demirovic v. Ortega*, 2017 WL 5196240, at \*3 (E.D.N.Y. 2017) (citations omitted).

To establish a *prima facie* claim of retaliation in violation of the FLSA, a plaintiff must show "(1) participation in [a] protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Santana v. Rent A Throne, Inc.*, 2018 WL 1027667, at \*7 (E.D.N.Y. 2018) (citations and quotations omitted). As set forth more fully herein, Plaintiff has established a *prima facie* case of retaliation.

The analogue section regarding retaliation under the NYLL provides that no employer or his or her agent "shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer…that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter[.]" NYLL § 215(1)(a). The same standard for a claim of retaliation under the FLSA also applies to a claim of retaliation under NYLL. *Santana*, 2018 WL 1027667 at \*7 (citation omitted).

13

### i.    Defendants Have Taken Adverse Employment Actions Against Plaintiff in Retaliation for Filing the Complaint

"[A] plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by 'showing that the protected activity was closely followed in time by the adverse [employment] action.'" *Salazar v. Bowne Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 384 (E.D.N.Y. 2011) (citing *Gorman–Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001). Moreover, "the element of causal connection…may also rely on non-circumstantial evidence, such as written or verbal statements of retaliatory intent." *Id.* (citing *Pakter v. New York City Dept. of Educ.*, 2010 WL 1141128, at *8 (S.D.N.Y. 2010)).

Here, there was less than a two (2) month gap between Defendants' appearance in this action, on August 12, 2021, and Defendants' first retaliatory acts against Plaintiff, on or around October 18, 2021. [*See* Jones Aff. at ¶ 10]. As set forth more fully below, Defendants' conduct after the filing of the Complaint demonstrates a concentrated effort to pressure Plaintiff to resign or quit his position at Quest Fleet, in retaliation for having filed this lawsuit.

### a.    Defendants Have Stopped Meaningfully Communicating with Plaintiff in Retaliation for Filing the Complaint

A defendant-employer's refusal to communicate with a plaintiff-employee can constitute an adverse employment action under the FLSA. *See Jones v. Pawar Bros. Corp.*, 434 F. Supp. 3d 14, 28 (E.D.N.Y. 2020) ("[p]laintiff stopped receiving calls from Singh – in effect, terminating [p]laintiff – because of the filing of this lawsuit…Such action would "dissuade[ ] a reasonable worker from making or supporting similar charges" and thus constitutes an adverse employment action) (citing *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010)).

Plaintiff has undertaken a protected activity under the FLSA in filing the instant litigation and Defendants knew of the lawsuit within a few days after it was filed. [*See* Dckt. Nos. 5-8, 11-12, 14, 16, 17]. After the filing of the lawsuit, Defendants have refused to meaningfully

14

communicate with Plaintiff by: (i) refusing to answer Plaintiff's phone calls to Defendants' office administrators [*see* Jones Aff. at ¶¶ 11-12]; (ii) refusing to respond to Plaintiff's complaints regarding his unpaid wages for the week of September 20, 2021 [*id.* at ¶¶ 10-13]; and (iii) ignoring Plaintiff's text messages [*id.* at ¶¶ 26, 31]. Sufficient evidence supports a finding of a causal connection between Plaintiff's protected activity under the FLSA and Defendants' refusal to meaningfully communicate with Plaintiff; *to wit*: (i) the temporal proximity between the filing of the action, Plaintiff's numerous complaints[15], and Defendants' conduct; as well as (ii) verbal statements made by Defendants' office manager – Mable Iro – that "[Jones is] wrong for filing this lawsuit! [Jones is] an independent contractor!". [Jones Aff. at ¶ 11].

### b. Defendants are "Overloading" Plaintiff in Retaliation for Filing the Complaint

According to the Second Circuit, the assignment of a disproportionately heavy workload can constitute an adverse employment action *Bertuzzi v. Copiague Union Free Sch. Dist.*, 2020 WL 5899949, at *8 (E.D.N.Y. 2020), *report and recommendation adopted as modified*, 2020 WL 3989493 (E.D.N.Y. 2020); *see also Neita v. Precision Pipeline Sols.*, 2018 WL 3151699, at *17 (E.D.N.Y. 2018), *report and recommendation adopted*, 2018 WL 1605143 (E.D.N.Y. 2018), *aff'd*, 768 F. App'x 12 (2d Cir. 2019) ("A workload heavily disproportionate to those similarly situated has been held to be an example of an adverse action") (citing *Delgado v. Triborough Bridge & Tunnel Auth.*, 485 F. Supp. 2d 453, 461 (S.D.N.Y. 2007)).

---

[15] "An employee may premise a section 215(a)(3) retaliation action on an oral complaint made to the employer, so long as…the complaint is 'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'" *Marcotte v. City of Rochester*, 677 F. App'x 723, 726 (2d Cir. 2017) (quoting *Kasten v. Saint–Gobain Performance Plastics Corp.*, 536 U.S. 1, 14 (2011)).

15

By refusing to provide Jones with a Sprinter Van, or any one of the many other specialized trucks in Quest Fleet's "Fleet"[16], and by requiring Jones to transport unsafe[17] Sprinter Loads, Defendants are retaliating against him for filing the Complaint. [*See* Jones Aff. at ¶¶ 16-39].

### c.  Plaintiff Has Suffered Material Adverse Changes to His Employment in Retaliation for Filing the Complaint

A change in work assignment practices following an oral complaint constitutes an adverse employment action for purposes of retaliation. *See Benzinger v. Lukoil Pan Americas, LLC*, 447 F. Supp. 3d 99, 131 (S.D.N.Y. 2020) (removal from certain projects sufficient to state a claim on plaintiff-employee's FLSA retaliation claim); *Sapia v. Home Box Off., Inc.*, 2019 WL 4867539, at *4 (S.D.N.Y. 2019) (allegations sufficient to state a claim of retaliation where defendant-employer ceased assigning plaintiff-employee shifts); *Cabrera v. CBC Corp.*, 2018 WL 1225260, at *5 (S.D.N.Y. 2018); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 240 (2d Cir. 2007) (employee moved to a less desirable work station and shift assignments was a victim of an adverse employment action.) Thus, there is sufficient evidence to support a finding of a causal connection between Plaintiff's protected activity under the FLSA and Plaintiff's inexplicable reassignment from Part's Authority to Coney Island.

### Sufficiently Serious Questions and Balance of Hardships

Even assuming, *arguendo,* that Plaintiff has failed to establish a likelihood of success on the merits, he is still entitled to a preliminary injunction because he has established sufficiently

---

[16] Defendant's Website lists their "Fleet" of vehicles, which includes four (4) specialized trucks designed to transport Sprinter Loads, *to wit*: (i) Sprinter Vans; (ii) cargo vans; (iii) minivans; and (iv) 24ft box trucks. *See* http://questfleet.com/our-fleet/

[17] Defendant's' Website http://questfleet.com/ contains a list of "Frequently Asked Questions". In response to the prompt: "What Type of Vehicle Will I Use", Defendants represent as follows:

> "Each driver must have a vehicle suitable for delivering small to medium size packages, usually just a few bags but sometimes several cases. It is recommended that you use a fuel-efficient vehicle in good condition for deliveries. Other Vehicles like Sprinters or Trucks are for special deliveries."

*See* http://questfleet.com/career/.

serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in their favor. For the reasons already stated, there are serious questions going to the merits of Plaintiff's claims of retaliation making them fair ground for litigation. Further, the balance of hardships tips decidedly in Plaintiff's favor. The failure to grant an injunction will harm Plaintiff financially, and physically. Without the sought-after injunctive relief, Plaintiff will face bodily harm, and continue to face difficulty in prosecuting the instant litigation. In contrast, if an injunction is issued, Defendants will not suffer any hardship. They will simply be prevented from harassing Plaintiff..

**Public Interest Supports Injunctive Relief**

C.      Further, public interest tilts heavily in favor of injunctive relief, as a matter of law. "The 'public interest' prong simply means that if injunctive relief is granted, a court should ensure that the injunctive provisions of the order do not harm the public interest." *SEC v. Citigroup Global Mkts. Inc.*, 673 F.3d 158, 163 n.1 (2d Cir. 2012). There is undoubtedly a public interest in allowing employees to enforce their rights, without fearing retaliation or assault. But the Court need not address whether some public interest is served or not in order to grant preliminary relief. *See Flores v. Amigon,* 233 F. Supp. 2d 462, 464 (E.D.N.Y. 2002). The Court only need find that the public interest is not harmed. Here, there are entirely private interests at stake, and the Court should find that the public interest is not harmed by a grant of preliminary injunctive relief.

## II.      Plaintiff Should be Granted Leave to Amend

In light of the purpose of Fed.R.Civ.P. 15 – indeed all of the Federal Rules of Civil Procedure – to ensure the "just, speedy, and inexpensive" resolution of cases, the Court should exercise its discretion to grant Plaintiff's leave to amend the Complaint. *Bank*, 2020 WL 6873436 at *2 (quoting Fed.R.Civ.P. 1) (internal citation omitted).

17

As set forth more fully in § I(A), *supra*, Plaintiff has established a *prima facie* case for their three proposed additional causes of action for: (i) retaliation under the FLSA; and (ii) retaliation under the NYLL. Thus, Plaintiff's proposed claims are not futile, and are supported by detailed factual allegations. *See Rodriguez v. Nat'l Golf Links of Am.*, 2020 WL 3051559 (E.D.N.Y. 2020) (granting motion to amend complaint to add claims of retaliation under the FLSA and NYLL). Leave to amend should, therefore, be granted.

## CONCLUSION

For the reasons stated above, it is respectfully submitted that the Court: enter an order[18] temporarily enjoining and restraining Defendants from, *inter alia*, harassing, intimidating, and/or retaliating against Plaintiff, in any form, and grant Plaintiff leave to file the proposed First Amended Complaint, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
         December 21, 2021

                                        LEVIN EPSTEIN & ASSOCIATES, P.C.

                                        */s Jason Mizrahi*
                                        Jason Mizrahi, Esq.
                                        Joshua Levin-Epstein, Esq.
                                        60 East 42nd Street, Suite 4700
                                        New York, New York 10165
                                        Tel No.: (212) 792-0048
                                        *Attorneys for Plaintiff*

---

[18] A proposed temporary emergency restraining order and protective order is attached to the Mizrahi Decl. at **Exhibit "C"**.

18