# LEVIN-EPSTEIN & ASSOCIATES, P.C.
_____
60 East 42nd Street • Suite 4700 • New York, New York 10165
T: 212.792.0046 • E: Joshua@levinepstein.com

July 26, 2022

*Via ECF*
The Honorable Taryn A. Merkl, U.S.M.J.
U.S. District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York

      Re:    *Jones v. Questfleet LLC et al*
                **Case No.: 21-cv-4042**

Dear Honorable Magistrate Judge Merkl:

    This law firm represents Plaintiffs Vernon Jones ("Jones") and Khalil Moses[1] ("Moses", and together with Jones, the "Plaintiffs") in the above-referenced action. This letter is submitted pursuant to *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015), seeking approval of the enclosed Settlement Agreement, which provides for a total settlement amount of $50,000.00 and the dismissal of Plaintiffs' claims with Prejudice.

    A copy of the executed Settlement Agreement is attached hereto as "**Exhibit A**."

    A Stipulation of Dismissal with Prejudice is being filed simultaneously with this letter motion, and the parties respectfully request that the court So-Order the Stipulation.

## I.    Procedural History.

    This is an action under the Fair Labor Standards Act ("FLSA") and the New York State Labor Law ("NYLL") brought by two (2) individuals against their former employer and others, for violations of federal and state wage-and-hour laws. Defendants Quest Fleet LLC (the "Corporate Defendant"), Mike "Doe" and Raymond Pichardo (collectively, the "Individual Defendants", and together with the Corporate Defendant, the "Defendants") allegedly operated a "year-round" courier delivery service known as "Quest Fleet".

    According to the operative amended complaint filed on January 13, 2022 [Dckt. No. 26] (the "Amended Complaint", or the "*Am. Compl.*"), Defendants misclassify their couriers, including Plaintiffs, as independent contractors, and fail to pay their couriers, including Plaintiffs, legally required wages under the FLSA and NYLL

---

[1] On January 26, 2022, Plaintiff Khalil Moses filed a notice of consent to participate in this action as an "opt-in" plaintiff. [*See* Dckt. No. 28].

1

According to the Amended Complaint. from at least August 2020, Plaintiffs allegedly worked approximately 7:00 a.m. to 6:00 p.m. per workweek, five (5) to six (6) days per week, for approximately 55 to 66 hours during each weeks, respectively. Throughout their employment for Defendants, Plaintiffs were allegedly paid as independent contractors, on a flat salary basis, at a rate of $120 per day.

Plaintiffs' wages allegedly did not vary regardless of how many additional hours they worked in a week. For example, on multiple occasions, Plaintiffs were assigned a drop-off location in Coney Island, New York, which required them to drive an additional one (1) to two (2) hours past their typical schedule. If Plaintiffs ever worked a part day, or a half-day, Defendants would not pay Plaintiffs their $120 day rate, and would deduct Plaintiffs' pay. Defendants allegedly failed to pay Plaintiffs a spread-of-hours premium for any shifts worked that exceeded ten (10) hours in duration. Defendants also allegedly failed to provide Plaintiffs with accurate written wage notices and wage statements of, *inter alia*, their hours worked, hourly rate of pay, overtime rate of pay, and regular payday, in violation of NYLL § 195(3).

The original Complaint [Dckt. No. 1] asserts seven (7) Causes of Action against Defendants.

| | | |
|---|---|---|
| FIRST: | Unpaid minimum wages under the FLSA; |
| SECOND: | Unpaid overtime wages under the FLSA; |
| THIRD: | Unpaid minimum wages under the NYLL; |
| FOURTH: | Unpaid overtime wages under the NYLL; |
| FIFTH: | Unpaid spread-of-hours premiums under the NYLL; |
| SIXTH: | Failure to provide wage notices under the NYLL and Wage Theft Prevention Act; and |
| SEVENTH: | Failure to provide wage statements under the NYLL and Wage Theft Prevention Act. |

[*Compl*. at ¶¶ 76-106].

Following a hearing held on January 7, 2022 before the Honorable Judge Carol Bagley Amon, Plaintiff Jones was granted leave to file a first amended complaint adding Raymond Pichardo[2] as an individual Defendant, and two (2) additional causes of action for: (i) retaliation under the FLSA; and (ii) retaliation under the NYLL. [*See* January 7, 2022 Minute Entry and Order].

---

[2] Raymond Pichardo was previously sued herein as Raymond "Doe".

Between November 9, 2021 and April 20, 2022, Defendants produced dozens of pages of payroll records, time records, and electronically-stored-information, and other documents concerning Plaintiffs' employment. If such production is credited, Plaintiffs would be entitled to significantly less compensation than alleged.

On or around June 3, 2022, after multiple rounds of negotiations at a virtual settlement conference held before Your Honor, the parties reached a resolution in principle to settle this matter for a total sum of $50,000 (the "Settlement Amount") to be paid out in accordance with the terms of the accompanying Settlement Agreement.

The settlement is objectively fair, reasonable, and the product of arm's length negotiations between experienced counsel. For these reasons and those set forth in further detail below, the settlement should be approved.

## II. The Settlement Agreement is Fair and Reasonable.

To determine whether an FLSA Settlement Agreement should be approved as fair and reasonable, courts in the Second Circuit consider the totality of the circumstances, including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted).

"Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects reasonable compromise over contested issues, the court should approve the settlement." *Martinez v. Hilton Hotels Corp.*, 2013 WL 4427917, at *2 (S.D.N.Y. 2013) (citation omitted).

### A. The Settlement Sum is Substantial and Fair Given the Plaintiffs' Range of Recovery.

The first factor articulated in *Wolinsky* examines "the Plaintiff's range of possible recovery." *Wolinsky,* 900 F.Supp.2d 332, at 335.

The Settlement Agreement satisfies this prong because Plaintiffs' proposed ultimate recovery represents approximately 58% of Plaintiffs' estimated maximum recovery for unpaid wages. See *Chowdhury v. Brioni America, Inc.*, 2017 WL 5953171 at *2 (S.D.N.Y. 2017) (net settlement of 40% of FLSA Plaintiff's maximum recovery is reasonable); *Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486 at *2 (S.D.N.Y. 2017) (net settlement of 29.1% of FLSA

3

Plaintiff's maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. 2015) (approving a settlement constituting 25% of the maximum possible recovery).

The method and formula for the derivation of the Plaintiffs' reasonable range of recovery assumes the following, after considering Defendants' documentation of hours worked and compensation received:

(i) Plaintiffs would have a low likelihood of recovery for the allegations of overtime given that Defendants produced time records.

(ii) Plaintiffs would have a low likelihood of recovery for the allegations of days worked per week, given that Defendants produced payroll records indicating how many days each Plaintiff worked.

(iii) Plaintiffs could stand to gain nothing, if the Court credited Defendants' arguments that Plaintiffs were exempt independent contractors.

Taking these assumptions into account, the undersigned computed that the alleged unpaid wages yielded the aggregate amount of $86,294.69. The undersigned yielded this amount by subtracting Plaintiffs' assumed lawful wages, by Plaintiffs' paid wages. Defendants sharply dispute that Plaintiffs are owed any unpaid wages.

The Settlement Agreement requires that Defendants pay a settlement sum in the amount of $50,000.00 on or before September 28, 2022, to resolve the case. After such attorneys' fees and costs, Plaintiff Jones will receive payments totaling $20,410.05, in the aggregate. After such attorneys' fees and costs, Plaintiff Moses will receive payments totaling $12,510.18, in the aggregate

Plaintiffs believe that the Settlement Amount is a fair compromise to resolve this case without further litigation, and without subjecting both parties to the time and expense of additional discovery.

The number of hours Plaintiffs worked was a seriously contested issue that made the settlement of the claims asserted in this action difficult. The parties engaged in discovery to address various issues related to liability and damages. In the course of discovery, Defendants provided the dated time and payroll records that were maintained during Plaintiffs' employment. These records potentially compromised Plaintiffs' claims given that those records were created by "punch-in" and "punch-out" entries generated by Plaintiffs. Defendants' production of employment records if credited, appear to contradict Plaintiffs' claims.

The undersigned law firm conducted an analysis based on the applicable maximum statutes of limitation under the FLSA while taking into consideration the information gleaned from Defendants' production of records. Through the course of the discovery process, the key issue that evolved concerned whether or not Plaintiffs were paid for all hours worked, including spread-of-hours pay.

The net proceeds of the Settlement Agreement compensates Plaintiffs for all of the hours business records show that Plaintiffs worked, and do not take into account Defendants' sharp dispute concerning whether all such hours were spent working. In addition, the net proceeds provide for liquidated damages, and a compromised amount for claimed wage notice violations.

Given the risks these issues presented, the Settlement Amount is reasonable.

### B.  The Settlement Agreement Avoids the Incurrence of Additional Expenses.

The second *Wolinsky* factor examines "the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses." *Wolinsky,* 900 F.Supp.2d 332, at 335. This factor also weighs in favor of *Cheeks* approval.

The Settlement Agreement resolves bona fide disputes over sharply contested issues, namely the total number of hours worked by Plaintiffs. In that regard, Defendants assert that Plaintiffs worked substantially fewer hours than they allege. During the discovery phase of this case, Defendants produced time reports and paystubs. If the trier of fact determined that the computer generated time reports and paystubs were accurate, then Plaintiffs worked fewer hours than alleged, resulting in a diminished recovery. In fact, there is the possibility they would not be owed any wages. Proceeding to trial would consume significant amounts of time and resources, and Plaintiffs face the hurdles of rebutting Defendants' time records for certain periods of time. *See Garcia v. Jambox, Inc.,* 2015 WL 2359502, at *3 (S.D.N.Y. 2015) (Plaintiff's burden on the rebuttable presumption is high where Defendants have produced records).

The continued litigation of this case would necessitate no less than four (4) depositions, and a trial. The associated costs and the continued prosecution of this case would necessitate the incurrence of substantial attorneys' fees and costs on both sides. Accordingly, it is in the interests of both parties to effectuate a settlement.

### C.  The Seriousness of the Litigation Risk Faced by Plaintiffs is High.

The third *Wolinsky* factor examines "the seriousness of the litigation risks faced by the parties." *Id at 335.* This factor also weighs heavily in favor of settlement.

Both parties face serious litigation risks as to both liability and damages, *to wit*: prevailing on the amount of hours allegedly worked, and the amount of alleged unpaid wages owed.

Defendants furnished time records and payroll records for the relevant period. Plaintiffs, in order to succeed on the merits for this period, would have to rebut the presumption that Defendants paid Plaintiffs in accordance with NYLL and/or the FLSA. Where, as here, Plaintiffs have produced no documentation of their hours worked or compensation received for this period, and Defendants have produced records, Plaintiffs' burden on this rebuttable presumption is high. *Gyalpo v. Holbrook Dev. Corp*., 577 B.R. 629 (E.D.N.Y. 2017); *Garcia v. Jambox, Inc., supra* (S.D.N.Y. 2015).

Accordingly, the seriousness of the litigation risks on the part of both parties' continued prosecution of the case weighs in favor of settlement.

### D. The Settlement Agreement is a Fair Compromise Accomplished Between Experienced Counsel Following Court-Ordered Settlement Conference.

The fourth *Wolinsky* factors examines "whether the settlement agreement is the product of arm's-length bargaining between experienced counsel" as well as the "possibility of fraud or collusion." *Wolinsky,* 900 F.Supp.2d 332, at 335. This factor weighs heavily in favor of *Cheeks* approval.

The contested issues, and arms-length negotiation by counsel demonstrate there was no fraud or collusion. *See Meigel v. Flowers of the World, NYC, Inc*., 2012 WL 70324, at *1 (S.D.N.Y. Jan. 9, 2012) ([T]ypically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement). *Abrar v. 7-Eleven, Inc*., 2016 WL 1465360, at *2 (E.D.N.Y. 2016). Additionally, Plaintiffs are satisfied with the settlement amount and voluntarily and willingly entered into the agreement.

Levin-Epstein & Associates, P.C. has obtained favorable decisions in wage-and-hour cases that have set precedent in this area of law. *See Singh v. Lintech Elec., Inc.,* 2021 WL 1062533, at *3 (E.D.N.Y. 2021) (securing dismissal of fraudulent conveyance actions, and cancellation of *lis pendens*, filed in FLSA action); *Suarez et al v. Brasserie Felix, Inc. et al*, Case No. 19-cv-07210, Dckt. No. 59 (hired by Plaintiffs' counsel to facilitate resolution in bankruptcy proceedings and secured $800,000 settlement on behalf of twelve (12) FLSA plaintiffs); *El Aalaoui v. Lucky Star Gourmet Deli Inc.,* 2021 WL 22787, at *1 (S.D.N.Y. 2021) (successfully vacating default judgment entered against FLSA defendants in the amount of $231,660); *Rivera v. Crabby Shack, LLC,* 2019 WL 8631861, at *5 (E.D.N.Y. 2019) (successfully arguing motion to enforce and approve settlement agreement on behalf of defendants)*; Pugh v. Meric*, 2019 WL 2568581, at *2 (S.D.N.Y. 2019) (post-bench trial order issued by the Hon. Judge Denise Cote, holding that the "wage notice penalty" in NYLL § 198(1)(1-b), by its very terms, does not mandate the imposition of damages); *Pugh v. Meric*, 2019 WL 3936748, at *5 (S.D.N.Y. 2019) (post-bench trial order reducing plaintiff's attorneys' fees award of $8,000 to $800); *Reyes v. The Picnic Basket, Inc.,* Case No. 18-cv-140, Dckt. No. 39, at *3-4 (S.D.N.Y. 2018) (successfully opposing Plaintiff's motion for conditional certification).

Moreover, the Settlement Agreement protects Plaintiffs from the risk of default by requiring Defendants to execute a Settlement Agreement providing for recovery of attorneys' fees in the event of default. *See* Ex. A.

### III. The Allocation for Attorneys' Fees and Costs is Reasonable.

As Plaintiffs' counsel, the undersigned agreed to be paid a 1/3 contingency fee, agreed to by Plaintiffs in their Retainer Agreement, which is reduced to writing and is signed by Plaintiffs, a copy of which is attached as "**Exhibit B**".

Disbursements we have paid are limited to service of process ($220.12) and a filing fee ($402.00), for a total of $622.12 in costs. The undersigned deducted that amount from the Settlement Amount, and divided the difference by three, with one-third for legal fees and two thirds to Plaintiffs. Proof of disbursements are included in "**Exhibit C**". A true and correct copy of Plaintiffs' counsel's contemporaneous time and billing records, documenting each attorneys' hourly rate, hours expended, and tasks worked on, is annexed hereto as **Exhibit "D"**.

The contingency fee in this case should be approved because it is the fee Plaintiffs agreed upon in their retainer agreement.  *In re Lawrence*, 24 N.Y.3d 320, 339 (2014) ("Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written.").

Moreover, the one-third contingency is the fee which courts in this District consider to be presumptively fair in FLSA cases. *See, e.g., Castillo v. Cranes Express Inc*., 2018 WL 7681356, at *5 (E.D.N.Y. 2018) (same); *Vidal v. Eager Corp*., 2018 WL 1320659, at *2 (E.D.N.Y. 2018); *Ezpino v. CDL Underground Specialists, Inc*., 2017 WL 3037483, at *3 (E.D.N.Y. 2017); *Hdir v. Salon de Quartier*, 2017 WL 8950426, at *2 (E.D.N.Y. 2017) ("Courts in this district using the percentage method have found a fee award of one third of the settlement amount to be reasonable".) (*citing Romero v. Westbury Jeep Chrysler Dodge, Inc*., 2016 WL 1369389, at *2 [E.D.N.Y. 2016]); *Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 WL 6621081 at *3 (E.D.N.Y. 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp*., 2013 WL 5308277 at *2 (E.D.N.Y. 2013) (approving attorney's fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by courts in this Circuit").

Based on this, the requested fee of one-third of Plaintiffs' recovery should be found reasonable and permitted. The parties respectfully request that the Court approve the settlement as fair and reasonable and So Order the proposed Stipulation to Dismiss the case.

### IV.     The Agreement Satisfies All Other Factors Considered for Approval.

The terms of the Settlement Agreement are consistent with *Cheeks*. For example, the release in the Agreement is limited to wage-and-hour claims and there are no confidentiality or non-disparagement provisions, although there is a narrow "no publication" clause that prohibits Plaintiffs from contacting the media or posting about the settlement on social media. Plaintiffs and the undersigned believe that this is a reasonable, limited restriction necessary to implement the settlement. *See, e.g., Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 WL 922223, at *2 (S.D.N.Y. 2016) (holding that nondisclosure clause prohibiting contact with media or social media "is fair and…does not run afoul of the FLSA's remedial purposes").  The settlement was reached following arm's-length negotiations between counsel well-versed in wage-and-hour law and following extensive discovery.

In sum, the settlement is fair and reasonable, providing Plaintiffs with a substantial recovery protected against the uncertainties and costs of trial, and should be approved by the Court.

7

We thank the Court for its time and consideration of this matter.

                Respectfully submitted,

                LEVIN-EPSTEIN & ASSOCIATES, P.C.

By: */s/ Jason Mizrahi*
    Jason Mizrahi, Esq.
    60 East 42nd Street, Suite 4700
    New York, NY 10165
    Tel. No.: (212) 792-0048
    Email: Jason@levinepstein.com
    *Attorneys for Plaintiffs*